UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JAIME DORADO**

Plaintiff,

v.                                                    **No. 4:26-cv-00380-P**

**CITY OF FORT WORTH, ET AL.,**

Defendants.

## MEMORANDUM OPINION & ORDER

On April 21, 2026, Plaintiff Jaime Dorado filed his second amended complaint ("SAC") alleging Defendant Officers J. Cardenas, R. Dozier, C. Cardona, and the City of Fort Worth ("City") violated his Fourth Amendment rights pursuant to 42 U.S.C § 1983 because the Officers used excessive force when arresting and restraining him. ECF No. 21 at 1. Further, Plaintiff alleges Defendant Cardenas violated his Fourteenth Amendment right because she was deliberately indifferent to Plaintiff's need for post-arrest medical treatment. ECF No. 21 at 8. In response, on May 5, 2026, Defendant Cardenas and the City filed Motions to Dismiss. ECF No. 25, 26. Having considered the Motions, the docket, and the applicable law, filings and for the reasons detailed below, the Court finds the Motions should be **GRANTED**.

## BACKGROUND

Plaintiff's claims against the City and Defendants arise out of his arrest for public intoxication and resisting arrest. ECF No. 21 at 4. Because of the arrest, Plaintiff alleges Defendant (1) used excessive force against him in violation of § 1983 and his Fourth Amendment rights; (2) Defendant failed to intervene and prevent other officers from exerting excessive force during his arrest in violation of § 1983; and (3) Defendant violated his Fourteenth Amendment right to post-arrest medical treatment as Defendant showed deliberate indifference towards his need for post-arrest medical treatment. ECF No. 21 at 12, 13, 14.

Additionally, Plaintiff alleges the City violated § 1983 and his Fourth Amendment right by (1) ratifying an unconstitutional policy or custom, (2) failing to train the officers, and (3) failing to discipline or supervise the Officers, which caused the alleged constitutional harm. ECF No. 21 at 15.

### A. Unlawful Force and Restraint

In the early morning hours of February 26, 2024, Defendant and other officers arrested Plaintiff as he was exiting the West 7th Street entertainment district in Fort Worth, Texas. ECF No. 21 at 4. Plaintiff alleges Defendant and the officers acted in concert to rapidly surround, converge on, and arrest him, utilizing excessive force to submit and restrain him. ECF No. 21 at 4, 5. Additionally, Plaintiff contends throughout this encounter, he was unarmed, awake, and not causing a public disturbance, and the excessive force caused injuries to his head, neck, and face. ECF No. 21 at 5, 6. Specifically, Plaintiff alleges Defendant personally participated and was integral in the seizure, takedown and restraint of him, though he also acknowledges uncertainty as to whether she did exert excessive force during the arrest.[1] ECF No. 21 at 5. Alternatively, Plaintiff contends that if Defendant did not apply excessive force, she had a reasonable opportunity to prevent it, failed to intervene, and restrain her fellow officers. ECF No. 21 at 18.

However, police records reflect a conflicting narrative. ECF No. 21 at 4. According to those records, Defendant and others initially found Plaintiff asleep, tried to wake him, but as they did, Plaintiff became combative, forcing the officers to arrest him. ECF No. 21 at 5. Yet, Plaintiff expressly refutes the accuracy of those facts in his SAC. ECF No. 21 at 4.

---

[1] The Court notes the inconsistencies in Plaintiff's SAC concerning the allegations of Cardenas's role in the arrest where unlawful force was used. Plaintiff first states Cardenas was personally involved in the unlawful use of force when arresting and restraining Plaintiff, but later states that Cardenas's personal role includes only that she documented the encounter, her participation in transferring Plaintiff while he was in custody.

In response, Defendant Cardenas filed the Motion, contending that while Plaintiff sustained serious injuries, neither she nor any officer exerted excessive force. ECF No. 25 at 13. And injuries alone do not transform reasonable force into excessive force. ECF No. 25 at 13. Furthermore, her judgment should not be second-guessed because of the specific circumstances she dealt with that night. ECF No. 25 at 13. Additionally, Defendant points to the inconsistencies in Plaintiff's SAC concerning her proximity and participation during the arrest. ECF No. 25 at 14. Regardless, she asserts Plaintiff's allegations plainly do not overcome her entitlement to qualified immunity. ECF No. 25 at 14.

Regarding Plaintiff's failure-to-intervene claim, Defendant, again, highlights the inconsistencies in Plaintiff's SAC concerning her proximity and awareness during the arrest. ECF No. 25 at 14. Specifically, Defendant notes the SAC barely describes the alleged physical takedown. ECF No. 25 at 14. And because Defendant did not believe any officer used excessive force, she argues it was impossible for her to know of a need to intervene. ECF No. 25 at 14. Ultimately, without a plausible allegation that any officer used excessive force, Defendant could not have had a clear opportunity to intervene. ECF No. 25 at 14. Regardless, Defendant contends Plaintiff's factual allegations fail to overcome her entitlement to qualified immunity. ECF No. 25 at 15.

### B. Deliberate Indifference to Medical Needs

Following Plaintiff's arrest, Emergency Medical Services (EMS) arrived at the scene to assess Plaintiff's injuries and cognitive state. ECF No. 21 at 6. Although Plaintiff sustained a left eye laceration, head pain, and trauma, EMS's documented Plaintiff remained on a Glasgow Coma Scale of 15 (GCS 15), indicating he remained fully conscious. ECF No. 21 at 6. Following EMS's initial assessment, Plaintiff denied EMS-offered medical treatment. ECF No. 21 at 7. However, Plaintiff contends Defendant continued to owe him a duty to respond reasonably to his obvious and serious injuries because she remained in custody and control of him. ECF No. 21 at 7. Furthermore, while in custody and control of Plaintiff, Defendant violated this duty and his right to post-arrest medical care by showing deliberate indifference to those injuries.

ECF No. 21 at 8. In support of this assertion, Plaintiff alleges while Cardenas transported him to jail and remained there with him, Defendant was deliberately indifferent to Plaintiff's requests for medical attention. ECF No. 21 at 8. While detained in jail, Plaintiff contends EMS evaluated him for a second time, reporting swelling around his left eye and head injury concerns, yet still documented Plaintiff at a GCS 15. ECF No. 21 at 7. Despite this evaluation, Plaintiff alleges no ambulance was called. ECF No. 21 at 8. Consequently, Plaintiff contends Defendant's deliberate ignorance caused a twenty-hour delay before Plaintiff received proper medical treatment, worsening his already known injuries, preventing his unknown injuries from discovery, and subjecting him to potential permanent damage. ECF No. 21 at 9, 10. Specifically, after Plaintiff arrived at a hospital, medical officials found acute and orbital fractures underlying his lacerated left-eye. ECF No. 21 at 10.

In response, Defendant asserts that Plaintiff's SAC fails to meet the stringent standard of deliberate indifference. ECF No. 25 at 15. Specifically, Defendant argues the SAC fails to allege she knew Plaintiff required medical assistance for his apparent injuries, or she could infer he had underlying injuries needing treatment. ECF No. 25 at 16. Further, Defendant points out Plaintiff's SAC admits he initially refused medical care in her presence, and Defendant subsequently called a second ambulance for Plaintiff at the jail. ECF No. 25 at 11. Finally, Defendant notes Plaintiff's SAC does not allege Defendant remained at the jail when the second ambulance arrived. ECF No. 25 at 11.

### C. Monell Liability

In addition to his claims against Defendant, Plaintiff also alleges the City is liable under *Monell* because its unconstitutional policy, widespread custom, failure to train or supervise was the moving force behind the violation of his constitutional rights. ECF No. 21 at 15. Specifically, Plaintiff asserts the City maintained, tolerated or failed to correct deficiencies in areas concerning officer conduct, including the use of force against unarmed individuals, takedown methods during arrest, intervention methods when an officer exerts unnecessary force, and post-arrest medical attention. ECF No. 21 at 15. Further, he asserts the

4

City knew or should have known these deficiencies existed, required correction, and maintaining such policies would obviously result in officers using disproportionate force against intoxicated individuals and failing to adequately monitor resulting injuries. ECF No. 21 at 15.

In response, the City asserts Plaintiff misconstrues the function of *Monell* liability, emphasizing a municipality cannot be held liable under § 1983 based on a theory of respondeat superior. ECF No. 26 at 12. Further, the City contends Plaintiff fails to sufficiently allege an official policy or widespread custom because he neither identifies an explicit official policy nor pleads widespread, persistent conduct that would notify the City of its employees' behavior. ECF No. 26 at 15. Rather, as the City claims, Plaintiff points to broad, conclusory deficient areas. ECF No. 26 at 15. Furthermore, the City argues Plaintiff's failure-to-train claim is deficient. ECF No. 26 at 17. Specifically, because he fails to identify a specific training program or any widespread pattern of unconstitutional activity the City knew it needed to correct. ECF No. 26 at 18. Similarly, regarding the failure-to-supervise claim, the City asserts Plaintiff failed to allege facts establishing the City's deliberate indifference because Plaintiff does not allege any persistent, widespread conduct by its employees that would notify the City of its need to correct these deficient actions via disciplinary action. ECF No. 26 at 19. Rather, according to the City, Plaintiff's complaint is devoid of sufficient factual matter to plausibly state a *Monell* claim under any theory of municipal liability.

Having evaluated the Parties' arguments, alongside the jurisdictional record, the Motion is now ripe for review.

## LEGAL STANDARD

*A. Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a

"probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## B. Section 1983 and Qualified Immunity

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

### 1. The Monell standard

To hold a city liable under § 1983, a plaintiff must show that "the municipality itself caused" the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). Such constitutional violations may occur due to the municipality's official, promulgated policies; its pervasive customs or practices; its failure to train, supervise, or discipline employees; or decisions or acts by final

6

municipal policymakers. *Monell*, 436 U.S. at 690–95. To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)). If an official policy is not explicit, "widespread practice of city officials" can suffice if the practice is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* If no constitutional violation occurred, the plaintiff's *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A *Monell* claim predicated on a failure-to-train theory requires a plaintiff to show "(1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Such a claim must be brought against the municipality's final policymaker. *Harris*, 489 U.S. at 389. And "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." C*onnick v. Thompson*, 563 U.S. 51, 61 (2011).

To establish inadequate training procedures, "a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). "The inadequacy of training must be closely related to the injury." *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002). To demonstrate that a municipality's failure to investigate or discipline amounts to an unlawful policy or custom, a Plaintiff must prove: (1) the city's failure to discipline amounts to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights. *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023).

Additionally, deliberate indifference is a stringent standard under § 1983. To show deliberate indifference, "[n]otice [to the municipality] of a pattern of similar violations is required." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quotation marks omitted). "A pattern is tantamount to official policy when it is so common and well-

settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation marks omitted). Thus, the municipal employees' actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *cf. Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (holding that twenty-seven prior incidents of excessive force over a three-year period were not sufficiently numerous to constitute a pattern). A narrow exception to the pattern of similar violations exists but "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (emphasis added).

### 2. *Qualified Immunity Standard*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. In excessive force cases, the second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of

immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).[2]

*C. Fourth Amendment*

During a detention or arrest, the right to be free from the use of excessive force is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state an excessive force claim, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted). The second and third elements collapse into a single objective-reasonableness inquiry, in which the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). Courts generally examine excessive force claims considering the "totality of the circumstances" to determine whether an officer's actions were objectively unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991–92 (5th Cir. 2011).

## ANALYSIS

I.    *Plaintiffs fail to state a claim against the City under § 1983 for an unconstitutional custom or policy.*

---

[2] Though this test appears to be straightforward, trying to make sense of its application or finding any consistency under Fifth Circuit precedent is often a difficult task for trial court judges. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458–60, 462 (5th Cir. 2022) (relying on extra-record sources such as The New York Times and The Guardian to find no qualified immunity for an officer's use of deadly force where suspect resisted arrest and drove over another officer with his vehicle) *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding that qualified immunity barred suit when officers found a suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames"). No wonder, even the appellate court describes this uneasy analysis as the "QI dance." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

Plaintiff fails to state a claim against the City under § 1983 for an unconstitutional policy or custom, failure to train and failure to supervise or discipline because he fails to allege plausible facts indicating an official policy, widespread custom or the city's deliberate indifference under all three claims.

### A. Plaintiff fails to state a claim against the City under § 1983 for an unconstitutional policy or custom because he neither pleads an official policy or custom nor a widespread practice of city officials.

A plaintiff must identify an official policy or widespread, persistent practice by a municipality's employees, otherwise plaintiff's *Monell* municipal liability claim fails. *See Valle* 613. F.3d at 541–42. Attempting to establish an unconstitutional policy or custom, Plaintiff alleges the City allowed an official policy of excessive force and inadequate post-arrest care for arresting officers. ECF No. 21 at 15. To support his assertion, Plaintiff proffers multiple deficient areas of officer activity including: de-escalation before using significant force on unarmed persons; takedown methods creating an unreasonable risk injury; intervention duties to restrain officers from using unnecessary force; post-force medical screening and hospital escalation when a detainee exhibits obvious head or facial trauma; and reporting practices that preserve an accurate factual and medical record. ECF No. 21 at 15. Accordingly, he asserts the City's liability stems from allowing these unconstitutional policies which directly caused his injuries. ECF No. 21 at 15. While Plaintiff's SAC proffers deficiencies in certain "areas", it does not associate these areas with official policies promulgated by the City. ECF No. 21 at 15. Consequently, Plaintiff must allege persistent, widespread activity by officers in these areas to show their conduct is so well-settled it represents municipal policy. *Peterson, 588 F.3d at 850.*

A plaintiff must do more than describe the incident giving rise to his injury to allege widespread, persistent activities by a municipality's employees. *See Pena*, 879 F.3d at 622. Plaintiff's SAC alleges only his singular encounter with the officers and does not allege any past conduct by the City's employees like his encounter. Therefore, Plaintiff does not plausibly state a widespread, persistent custom that fairly represents

the City's policy. Ultimately, asserting the City had actual or constructive knowledge cannot save the claim because such knowledge is legally immaterially absent a documented pattern of similar past widespread conduct. ECF No. 21 at 11.

Therefore, Plaintiff's *Monell* claim against the City for an unconstitutional policy or custom is hereby **DISMISSED with prejudice.**

### B. *Plaintiff fails to state a claim against the City under § 1983 for failure-to-train because he fails to plead a formal inadequate program and the City's deliberate indifference.*

1. Plaintiff fails to state an inadequate program.

To establish a *Monell* failure to train claim, a plaintiff must first identify a specific, inadequate training program rather than generalized areas of police activity that caused the plaintiff's injuries. *See Zarnow*, 614 F.3d at 170. Here, Plaintiff contends the City failed to train the officers in areas concerning the use of force against individuals creating a risk of head and facial injury, intervention methods among officers when one uses unnecessary force, and post-arrest medical attention to reduce obvious head and facial trauma. ECF No. 21 at 15. Accordingly, Plaintiff contends the City's instructive failures in those areas resulted in the officers' actions and plausibly support the inference those failures directly caused his constitutional harm. ECF No. 21 at 15. However, because Plaintiff's SAC fails to tie these broad categories of police conduct to an official policies or programs promulgated by the City, Plaintiff fails to "allege with specificity how a particular training program is defective." *See Zarnow*, 614 F.3d at 170.

Further, a plaintiff cannot state a plausible failure-to-train claim by detailing his injuries and alleging better training would have prevented it. The Fifth Circuit has explicitly held "[p]laintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Indeed, it does not "suffice to prove that an injury or accident could have been avoided if an officer had (omitted) better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Because

11

Plaintiff relies on his physical trauma to infer a municipal deficiency rather than pleading facts alleging an official policy or widespread, persistent conduct Plaintiff's claim fails. ECF No. 21 at 15.

### 2. Plaintiff fails to state the City's deliberate indifference.

To plausibly state a municipality's deliberate indifference in adopting a training policy, a plaintiff must show the municipality had notice of the policy's inadequacy, or a municipal employee had no training whatsoever. *See Sanders-Burns*, 594 F.3d at 381; *see also Pena*, 879 F.3d at 624. A plaintiff satisfies this notice requirement by pleading facts showing municipal employees engaged in persistent, widespread unconstitutional conduct. *See Webster*, 735 F.2d at 842. The municipality's notice of such continuous conduct demonstrates it accepts that conduct as the expected norm and practice of its employees. *Id.*

Plaintiff fails to plausibly allege the City's deliberate indifference. Noticeably, Plaintiff's SAC details only his singular encounter with the City's officers and does not mention a persistent, widespread pattern of similar misconduct. ECF No. 21 at 15. Further, this isolated incident does not invoke the narrow single-incident exception; the SAC does not claim any of the arresting officers completely lacked training. ECF No. 21 at 15. Instead, Plaintiff asserts the City failed to train its officers in generalized areas of police activity, not that they received no training whatsoever in these areas. ECF No. 21 at 15. The Court finds Plaintiff fails to plausibly state a *Monell* failure-to-train theory against the City.

Therefore, Plaintiff's *Monell* failure-to train claim against the City is **DISMISSED with prejudice.**

### C. *Plaintiff fails to state a claim against the City for failure to supervise or discipline because he fails to plead the City's deliberate indifference.*

To demonstrate a municipality's failure to investigate or discipline amounts to an unlawful policy or custom, a plaintiff must prove: (1) the city's failure to discipline amounts to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights. *Armstrong*, 60 F.4th at 277. To adequately allege deliberate indifference a plaintiff must plead a pattern of past widespread conduct

by municipal employees to establish the municipality had actual or constructive of that pattern. *See Sanders-Burns*, 594 F.3d at 381; *see also Peterson*, 588 F.3d at 850. Accordingly, a plaintiff must allege past misconduct in his complaint.

If a plaintiff fails to plead a pattern of past widespread conduct by a municipality's employees like the conduct causing plaintiff's injury, then plaintiff fails to show a municipality had notice of that conduct. Consequently, Plaintiff alleges only his singular encounter with the officers and does not allege any past similar widespread conduct by the City's officers. ECF No. 21 at 15. Accordingly, an isolated encounter, absent a pattern of similar constitutional violations by employees, fails to put the City on notice, and plausibly allege it's deliberate indifference. *Pena*, 879 F.3d at 623. Therefore, this singular encounter is an "unadorned, the-defendant-unlawfully-harmed-me accusation," and does not amount to a pattern which the city has notice of. *Iqbal*, 556 U.S. at 678.

Therefore, Plaintiff's *Monell* claim against the City for failure to investigate or discipline is **DISMISSED with prejudice.**

II.     *Plaintiff fails to state a claim against Defendant under § 1983, the Fourth Amendment, and the Fourteenth Amendment.*

Plaintiff accuses Defendant of using excessive force, violating his Fourth Amendment rights and clearly established law, thus preventing qualifying immunity. ECF No. 21. In response, Defendant asserts entitlement to qualified immunity. ECF No. 25. Accordingly, the Court inquires to see if Plaintiff's SAC alleges specific, plausible facts demonstrating both a constitutional violation, and that the Defendant's conduct was objectively unreasonable under clearly established law. *Pearson*, 555 U.S. at 232. Plaintiff's excessive force claim fails under this standard because his SAC offers generalized, conclusory claims concerning Defendant's use of excessive force. ECF No. 21 at 4, 5. Further, he fails to proffer precedent indicating similar situations of officers acting and violating his clearly established right. Additionally, Plaintiff's claim Defendant was deliberately indifferent to Plaintiff's

13

post-arrest medical needs fails because he fails to allege Defendant's deliberate indifference.

   A. *Plaintiff fails to overcome qualified immunity because he fails to plausibly allege Defendant used excessive force, or that any other officer used excessive force, thereby precluding his failure-to-intervene claim.*
      1. <u>Plaintiff fails to state a claim against Plaintiff for using excessive force.</u>

When a plaintiff names multiple officers as defendants in an excessive force claim, the Court evaluates "each officer's actions separately, to the extent possible." *Cope*, 3 F.4th at 207 (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). Accordingly, a plaintiff must allege claims of specific conduct and actions by an officer giving rise to a constitutional violation. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1995). Conversely, a plaintiff cannot plead "conclusory allegations failing to set forth specific facts showing (omitted) the use of force by [each individual officer] was excessive to the need and objectively unreasonable". *Baker*, 75 F.3d at 195; (quoting *Schultea v. Wood*, 47 F.3d 1427, 1432–34 (5th Cir. 1995)). Accordingly, courts cannot examine officers' actions collectively in determining their entitlement to qualified immunity; rather it must be done separately. *Meadours, v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

Although Plaintiff suffered serious injuries, the severity of his physical harm cannot substitute his failure to plead specific, individualized conduct by Defendant. *See Poole*, 691 F.3d at 633; *see also Baker*, 75 F.3d at 195; ECF No. 21 at 6. Attempting to support his excessive force claim, Plaintiff alleges Defendant personally participated and was integral to the takedown, seizure, and restraint of Plaintiff during his arrest. ECF No. 21 at 5. However, Plaintiff's SAC does not identify any specific conduct by Defendant which would allow the Court to assess its reasonableness. Additionally, Plaintiff's SAC fails to identify any specific conduct by other officers at the scene concerning their use of excessive force. ECF No. 21 at 4, 6.

Contrarily, *Santander v. Salazer* provides a plausible pleading of an excessive force claim against an individual officer. *See Santander v.*

14

*Salazer*, 133 F.4th 471, 479–80 (5th Cir. 2025). In *Santander*, the plaintiff alleged an officer violently shoved him from behind, threw him on the concrete, and punched him repeatedly. *Id.* Plaintiff's SAC does not resemble this type of plausible pleading. Thus, Plaintiff's SAC fails to plausibly state an excessive force claim against Defendant or overcome her entitlement to qualified immunity because it relies on group collective pleading. ECF No. 21 at 4, 5. Plaintiff needed to provide specific, individualized facts showing Defendant's conduct was excessive to the need and objectively unreasonable. *See Meadours*, 48 F.3d at 421; *see also Iqbal*, 556 U.S. at 678–79.

2. <u>Plaintiff fails to overcome qualified immunity because he fails to plausibly allege a violation of a clearly established right.</u>

Plaintiff fails also to plausibly allege a violation of a clearly established right because he defines the right at an impermissibly high level of generality, rather than identify specific precedent of officers acting under similar circumstances. *See Cope v. Cogdill*, 3 F. 4th 198, 204 (5th Cir. 2021). Generally, to satisfy this standard, a plaintiff must point to precedent featuring similar circumstances where an officer was held to violate an individual's constitutional right and explain how that precedent places the officer's conduct beyond debate. *Id.* at 205; *see Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (explaining defendant officers will be entitled to qualified immunity, if plaintiffs fail to identify or explain previous precedent featuring similar circumstances to the facts of their case.) While exact, on-point precedent is not required, broad, general propositions of a violation of a clearly established right do not overcome an officer's entitlement to qualified immunity. *Cope*, 3 F.4th at 205.

The right of a non-resisting, intoxicated citizen to be free from physical submission during arrest may be a clearly established right. However, if a plaintiff fails to plead precedent showing that right exists, then that plaintiff fails to overcome a defendant's qualified immunity. Accordingly, Plaintiff needed to plead prior precedent demonstrating that this right exists under similar circumstances. However, Plaintiff's SAC failed to identify any such previous precedent. ECF No. 21 at 4.

15

Thus, Plaintiff fails to plausibly allege a violation of a clearly established right. And even if the Court looks past Plaintiff's SAC to his response to Defendant's motion, the proffered cases fail to rectify his pleading failure. The Supreme Court, reaffirmed by Fifth Circuit interpretation, mandates that the clearly established right prong of a qualified immunity defense "must be undertaken in light of the specific context of the case," not as a broad general proposition. *Cope*, 3 F.4th at 204; (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In Plaintiff's response to Defendant's motion, he offers precedent unsimilar to the specific context of his case. Instead, Plaintiff provides precedent involving officer conduct during traffic stops, and drug-busts. Contrarily, Defendant arrested and physically took down Plaintiff in a dark, volatile entertainment district where circumstances may require fundamentally different decision making, especially concerning an allegedly intoxicated, combative individual. ECF No. 21 at 5. Thus, the dissimilarity between Plaintiff proffered precedent and the specific context of this encounter fails to offer Defendant fair warning that her conduct was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Regardless, Plaintiff's arguments in his response do not control this analysis.[3]

3. <u>Plaintiff fails to state a claim against Defendant for failure to intervene because he fails to plausibly allege any of the officers used excessive force.</u>

As noted, a plaintiff cannot collectively a group of officers used excessive force; rather, the plaintiff must isolate the specific, individualized conduct of each officer. *See Baker*, 75 F.3d at 195. Conclusory group pleadings inherently fall short because they fail to provide the factual basis necessary for the Court to evaluate each officer's actions separately. *See Cope*, 3 F.4th at 207.

As previously determined by the Court, Plaintiff failed to plausibly allege Defendant or any other officer used excessive force. Plaintiff's generalized assertion the officers, in concert, physically took him down

---

[3] Regardless, Plaintiff's SAC is the operative complaint and must plausibly allege previous precedent identifying similar circumstances where a clearly established right was violated by an officer.

16

fails to satisfy the individualized standard. ECF No. 21 at 4, 5. However, Plaintiff seeks to impose failure-to-intervene or "bystander liability" on Defendant for failing to stop his colleagues when physically taking down Plaintiff. *Buehler v. Dear*, 27 F.4th 969, 989 (5th Cir. 2022). However, this claim fails as well because bystander liability arises only where a plaintiff can plausibly allege an underlying use of excessive force by another officer. *Id.* Thus, Plaintiff's claim against Defendant for failure-to-intervene, or bystander liability fails as well.

   B. *Plaintiff fails to state a claim against Defendant under § 1983 and the Fourteenth Amendment's Due Process Clause for being deliberately indifferent to Plaintiff's post-arrest medical needs because he fails to plausibly allege Defendant's deliberate indifference.*

"Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have a constitutional right "not to have their serious medical needs met with deliberate indifference."' *Stapleton v. Lozano*, 125 F.4th 743, 749 (5th Cir. 2025) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Stapleton*, 125 F.4th at 749 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).

A pretrial detainee's claim alleging an individual officer's discrete acts or omissions amount to deliberate indifference is analyzed as an episodic act or omission rather than a systemic condition of confinement. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). This classification triggers the subjective deliberate-indifference standard. *Id.* To succeed on a subjective deliberate-indifference claim, the plaintiff must show the officer: (1) subjectively knew of a substantial risk of serious harm to the plaintiff, (2) responded to that risk with deliberate indifference, and (3) substantial harm resulted from the officer's conduct. *Stapleton*, 125 F.4th at 749.

"Deliberate indifference is an extremely high standard to meet." *Stapleton*, 125 F.4th at 749 (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). It "cannot be inferred merely from a negligent or even

17

a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (citing *Hare v. City of Corinth*, 74 F.3d 633, 645, 649 (5th Cir. 1996)). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Stapleton*, 125 F.4th at 749 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff fails to plausibly allege Defendant's deliberate indifference because his pleaded facts do not support the inference Defendant subjectively knew Plaintiff faced a substantial risk of serious harm post-arrest. Notably, EMS evaluated Plaintiff immediately after his arrest. ECF No. 21 at 6. Following that evaluation, Plaintiff refused medical treatment. ECF No. 21 at 6. Absent additional specific allegations, the Court finds a lay officer like Defendant cannot be charged with subjective knowledge of another's medical emergency when that person rejected EMS treatment, EMS allowed that rejection, and EMS documented that person at a GCS 15. ECF No. 21 at 6.

Even if Plaintiff asserts his serious injuries were apparent to Defendant during the post-arrest transfer, Plaintiff again falls short of plausibly alleging Defendant's subjective knowledge or wanton disregard. ECF No. 21 at 8.  At most, Plaintiff points to his injuries' swelling, but an officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference. *Stapleton*, 125 F.4th at 749–50. The Court cannot expect a lay officer to deduce internal medical emergencies from swelling alone, especially after EMS evaluated Plaintiff. ECF No. 21 at 6. Furthermore, any inference Defendant displayed wanton disregard is refuted by Plaintiff himself. At Plaintiff's own behest while Defendant transported him to jail Defendant secured Plaintiff an additional EMS evaluation at the jail. ECF No. 21 at 14. Considering these facts are Plaintiff's only allegations regarding Defendant's deliberate indifference towards his post-arrest medical needs, Plaintiff's claim fails as a matter of law.

18

*III.    The Motion for Leave to Amend the Complaint is Denied.*

Because Plaintiffs have pled their best case, any effort to amend the complaint would be futile. Further, this is Plaintiff's second amended complaint, not their first or their original complaint. Accordingly, the motion for leave to amend the complaint is hereby **DENIED.**

## CONCLUSION

For the reasons above, the Court **GRANTS** the City's Motion to Dismiss and Defendant's Motions to Dismiss. Accordingly, all claims against Defendant and the City are **DISMISSED with prejudice.**

**SO ORDERED** on this **24th day of June 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE